### Case No. 16,113.

#### UNITED STATES v. RAGSDALE.

[Hempst. 479.] [1]

Circuit Court, D. Arkansas. April. 1847.

INDIAN TRIBES—ADOPTION OF WHITE MAN—CONSTRUCTION OF PENAL STATUTES.

1. A white man who is incorporated with an Indian tribe at mature age, by adoption, does not thereby become an Indian, so as to cease to be amenable to the laws of the United States.

2. He may, however, by such adoption, become entitled to certain privileges in the tribe, and also make himself amenable to their laws and usages.

3. Therefore, the second article of the treaty of Washington, of the 6th of August, 1846, between the United States and Cherokee Indians (9 Stat. 871), had the effect to pardon an offence previously committed by an Indian, in the Cherokee country west of Arkansas, against a white man who had been adopted by that tribe, and become a part of it.

4. The case of U. S. v. Rogers, 4 How. [45 U. S.] 571, cited.

5. In the construction of penal statutes, it is a general rule that an offender who is protected by its letter, cannot be deprived of its benefit, on the ground that his case is not within the spirit and intention of the law.

[Cited in Cory v. Carter, 48 Ind. 337.]

[1] [Reported by Samuel H. Hempstead, Esq.]

6. Where there is no ambiguity there is no room for construction.

Indictment [against Thomas Ragsdale] for murder.

S. H. Hempstead, U. S. Dist. Atty.

Daniel Ringo and F. W. Trapnall, for prisoner.

Before DANIEL, Circuit Justice, and JOHNSON, District Judge.

JOHNSON, District Judge. Thomas Ragsdale, a Cherokee Indian, has been indicted in this court for the crime of murder, charged to have been committed upon a certain Richard Newland, a white man, in the country now occupied by the Cherokee Indians. After putting in the general issue of not guilty, the defendant has pleaded three additional pleas: in the first of which he avers that the said Richard Newland, in the year 1835, legally intermarried with a Cherokee woman, who was a member and citizen of the Cherokee tribe, in their country east of the Mississippi; and according to the laws and usages of the Cherokee Nation, said Newland was incorporated into and became a citizen of said tribe, for all the purposes of citizenship, and by virtue of said marriage became and was entitled to all the rights and privileges, civil and political, which belonged to any other citizen of said Nation. That when the United States removed the said tribe to their country west of the Mississippi, in the year 1838, said Newland was removed with them, and received from the United States his transportation money, rations, and year's subsistence after arriving in the country assigned to them west of the Mississippi, as a citizen and member of said tribe. That after said Newland was removed to the Cherokee country west of the Mississippi, he was and continued to be by virtue of his marriage and in accordance with the constitution, laws, and usages of said Nation, until the time of his alleged murder, entitled to all the rights and immunities, civil and political, which appertained to any and all other citizens of the tribe, and was subject and amenable to the laws and regulations of the Cherokee Nation. That said Newland, at the time of his said supposed murder, was an individual of the Cherokee Nation, within the meaning of the second article of the treaty made and concluded at Washington on the 6th day of August, 1846, between the United States and the Cherokee Nation of Indians; and that the murder of said Newland, if committed at all by the defendant, which he denies, was an offence by a citizen of the Cherokee Nation against an individual thereof, within the meaning of the said second article of said treaty, and was thereby fully and for ever pardoned.

The motion to strike out this plea made by the district attorney, is in the nature of a demurrer, and admits it to be true, for the purposes of this investigation. The second article of the treaty of Washington, of the 6th of August, 1846, contains the following provision: "All difficulties and differences heretofore existing between the several parties of the Cherokee Nation are hereby settled and adjusted, and shall, as far as possible, be forgotten, and for ever buried in oblivion. All party distinctions shall cease, except so far as this may be necessary to carry out this convention or treaty. A general amnesty is hereby declared. All offences and crimes committed by a citizen or citizens of the Cherokee Nation against the Nation, or against an individual or individuals, are hereby pardoned." Acts Cong. 1846, 9 Stat. 871. The only material inquiry presented by this plea is, whether the person charged in the indictment with the commission of the crime, and the person against whom it was committed, were, at the time, citizens or individuals of the Cherokee Nation, or tribe, for if they were, it is manifest that the offender has received a full and plenary pardon, by virtue of the second article of the treaty, above cited. The defendant Ragsdale is averred in the indictment to be an Indian of the Cherokee tribe, and not a white man; and consequently he is a citizen of the Cherokee Nation. Thomas Newland, upon whom the murder is charged to have been committed by Ragsdale, is averred in the plea to have incorporated himself with the Cherokee tribe of Indians as one of them, and was so treated, recognized, and adopted by the said tribe and the proper authorities thereof, and exercised all the rights and privileges of a Cherokee Indian in the said tribe, and was domiciled in their country, and that by these acts he became a citizen or an individual of the Cherokee Nation.

The question here arises, Whether a white man can become a member of the Cherokee tribe of Indians, and be adopted by them as an individual member of that tribe? It is certainly true that the United States have never acknowledged or treated the native tribes of Indians as independent nations, nor regarded them as the owners of the territory they respectively occupied. On the contrary, they have always considered and treated them as dependent nations or tribes, subject to their dominion and control, and have exercised legislative power over them, by the punishment of crimes committed within their limits, no matter whether the offender be a white man or an Indian. But this dependent condition has never prevented them from having laws and usages, for their own internal government, and of adopting other persons as members of their tribe. This, however, is not an open question, but is expressly affirmed by the chief justice in delivering the opinion of the supreme court in the case of U. S. v. Rogers, 4 How. [45 U. S.] 571 [Case No. 16,187]. He uses the following language: "We think it very clear, that a white man who, at mature age, is adopted into an Indian tribe, does not there-

by become an Indian, and was not intended to be embraced in the exception above mentioned. He may, by such adoption, become entitled to certain privileges in the tribe, and make himself amenable to their laws and usages; yet he is not an Indian, and the exception is confined to those who, by the usages and customs of the Indians, are regarded as belonging to the race. It does not speak of members of a tribe, but of the race generally, of the family of Indians; and it intended to leave them, both as regarded their own tribes and other tribes also, to be governed by Indian usages and customs." The above language is too clear to be misunderstood; that in the opinion of the supreme court, a white man may incorporate himself with an Indian tribe, be adopted by it, and become a member of the tribe. The plea avers that the said Newland did so incorporate himself, was adopted, and became a member of the Cherokee tribe of Indians, and continued to be a member thereof, to the time he is charged to have been murdered by Ragsdale.

The language of the treaty granting the pardon is clear, and free from ambiguity. Its language is, that "All offences and crimes committed by a citizen or citizens of the Cherokee Nation against the Nation or an individual or individuals, are hereby pardoned." It cannot be doubted that the latter clause of the above sentence means "against an individual or individuals of the Cherokee Nation." The offence of the defendant, then, is expressly embraced by the second article of the treaty granting a pardon, and the plea, if true, is a good bar to the indictment. It has, however, been earnestly contended on the part of the United States by the district attorney, that even admitting that the letter and words of the treaty apply to and embrace the defendant's case, that it is clearly not within the spirit and intention of the treaty. It is a sound rule in the construction of penal statutes, that if the case of the accused is clearly within the letter of a statute in his favor. the court will rarely, if ever. take his case out of it, upon the ground that it is not within the spirit and intent of the act. 4 Term R. 665; 6 Term R. 286; 1 Leach, 73; Dwar. St. 736; U. S. v. Wilson [Case No. 16,730]. The case must be clear and free from all doubt, to justify the court in making this construction. It is also a maxim of the law, that where there is no ambiguity, there is no room for construction. U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 95, 96. But looking at the spirit, object, and intent of the treaty, I can see no reasonable ground for the opinion that the crime charged against the defendant was not intended to be embraced. One great object of the treaty was the restoration of peace and harmony among the hostile parties of the Cherokee tribe, who by their conflicts and civil wars had disturbed the peace and threatened to deluge their land in blood; and to effect-

uate this desirable end a general amnesty of all past offences was declared, and as far as possible to be forgotten and buried in oblivion. In this plenary pardon to all native born Cherokees, why should it not also extend to adopted members of the tribe? After adoption they became members of the community, subject to all the burdens, and entitled to all the immunities of native born citizens or subjects; and it is reasonable, in my judgment, to suppose that they were intended to be included in the general amnesty.

The two remaining pleas are in substance a former trial, and acquittal for this offence under the Cherokee laws in the Cherokee country. These pleas are, in my judgment, clearly insufficient, upon the ground that the Cherokee court had no jurisdiction of his case. As for us, congress legislates for the punishment of crimes committed in the Indian country; that legislation is, in its nature, exclusive. The reasons upon which this position is based, I have not time at present to state, nor indeed do I deem it material, as I consider it free from doubt, and the reasons for it will suggest themselves to every reflecting mind.

The third and fourth pleas of former acquittal are ordered to be stricken out; but the motion to strike out the second plea of pardon is overruled. Ordered accordingly.

The prisoner was discharged on his plea of pardon.